# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | No. 06-20021-13-KHV |
| BAYRON MOREIRA, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's <u>Motion To Vacate, Set Aside Or Correct Sentence By A Person In Federal Custody</u> (Doc. #619) filed September 28, 2009. For reasons stated below, the Court overrules defendant's motion.[1]

## Factual Background

In 2005, as part of a Drug Enforcement Administration ("DEA") investigation into methamphetamine trafficking in Kansas City, Kansas, several confidential sources stated that they had purchased methamphetamine from Hector Moreira. On December 19, 2005 and January 10, 2006, confidential informants made controlled purchases of methamphetamine from Hector Moreira or his associates. Shortly before another controlled purchase on January 13, 2006, Hector Moreira

---

[1] On November 23, 2009, the government filed a response to defendant's motion. On December 22, 2009, the Court granted defendant an extension of time to January 26, 2010, to file a reply. <u>See</u> <u>Order</u> (Doc. #624). Defendant did not file a reply, but on March 17, 2010, he asked for an extension of time to respond because of his pro se status and the length of the government's response. <u>See</u> <u>Motion For A 30 Day Extension Of Time to Respond To The Government's Response To Movant's Motion To Vacate, Set Aside Or Correct Said Sentence Pursuant To Title 28 USC Section 2255</u> (Doc. #632) filed March 17, 2010. Defendant has not shown good cause or excusable neglect for his failure to timely file a reply or to request an extension of time. <u>See generally</u> D. Kan. Rule 6.1(a) (absent excusable neglect, extensions not granted unless motion made before expiration of deadline). The Court therefore overrules defendant's motion for extension of time.

alerted as to the presence of law enforcement and fled in a vehicle which he wrecked a short distance away. Officers found the wrecked vehicle but could not locate Hector Moreira. Officers later learned that Hector Moreira knew someone who lived close to where he had wrecked the car, and that he was staying at that residence.

On February 1, 2006, a grand jury returned a sealed indictment which charged Hector Moreira and nine others. The indictment did not name Bayron Moreira, Hector Moriera's cousin. The Court issued arrest warrants for Hector Moreira and the other defendants. On April 18, 2006, as part of an attempt to make a controlled purchase, a confidential informant called Hector Moreira. Hector Moreira instructed the informant to go to an auto parts store at 18th Street and Central Avenue in Kansas City, Kansas. The informant made a controlled purchase from Bayron Moreira at that location. After the purchase, officers followed defendant, who returned to the home of a co-conspirator, Alberto Perez-Jacome, at 1814 Bunker Avenue, some six blocks north of the auto parts store.

On April 29, 2006, DEA agents arrested defendant at his home in Belton, Missouri. That same day, agents also arrested Hector Moreira and Perez-Jacome at the Bunker Avenue house. The other members of the conspiracy had already been arrested. When agents entered the Bunker Avenue residence, they saw Hector Moreira standing at the stove with a pot of methamphetamine and baggies nearby, and approximately one half kilogram of cocaine on the kitchen table. During the search of the Bunker Avenue house, agents found large amounts of drugs and drug paraphernalia. In a drop ceiling, agents also found four handguns, an AK-47 assault rifle, an SKS Norinco assault rifle, various magazines, a large amount of ammunition and more than $7,000.

On May 26, 2006, a grand jury returned a 21-count indictment which charged defendant and

12 co-defendants. In particular, the indictment charged defendant with (1) conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, 500 grams or more of cocaine, 50 grams or more of methamphetamine, and a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(B)(ii), (b)(1)(D), 846, and 18 U.S.C. § 2; and (2) distribution of five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii), and 18 U.S.C. § 2. Trial was set for March 20, 2007. On March 19, 2007, three co-defendants (Kenet Del Cid-Rendon, Terri Burford and Justin Bollig) pled guilty. On the day of trial, defendant and his remaining three co-defendants (Hector Moreira, Edguar Lizardo-Figueroa and Alberto Perez-Jacome) pled guilty without plea agreements.[2] Even so, as to defendant, the government agreed to recommend a sentence at the low end of the applicable sentencing guideline range.

The Presentence Investigation Report ("PSIR") noted that in addition to the controlled purchase, a witness told agents that defendant was "present at drug transactions on several occasions." PSIR ¶ 76. On those occasions, defendant was present with two individuals who reportedly were "lieutenants" of Hector Moreira. Id. ¶ 73. Another witness admitted buying cocaine from defendant "a few times." Id. ¶ 77. The PSIR concluded that defendant was accountable for all drugs found in the Bunker Avenue house, the methamphetamine from the controlled purchase and – based on witness statements – three additional transactions, each deemed to be of the same quantity and purity as the controlled purchase. See id. ¶ 83.

Defendant's base offense level was 34. Under U.S.S.G. § 2D1.1(b)(1), based on the weapons found at the Bunker Avenue house, the PSIR gave defendant two levels for possession of a firearm.

---

[2] The Court later allowed Perez-Jacome to withdraw his plea, but a jury ultimately convicted him and the Tenth Circuit affirmed his conviction. See United States v. Perez-Jacome, 2009 WL 4829870 (10th Cir. Dec. 16, 2009).

-3-

The PSIR noted that his co-conspirators possessed the weapons and that it was not "clearly improbable that the firearms were connected to drug trafficking activities for which Bayron Moreira is accountable." Id. ¶ 91 at 22. Defendant received a two level downward adjustment for acceptance of responsibility. Based on a total offense level of 34 and a criminal history category of I, the recommended guideline sentence was 151 to 188 months.

At sentencing, defendant objected to the PSIR because (1) it included the enhancement for possession of a firearm, (2) it did not include a downward adjustment for a minor or minimal role in the offense, (3) it stated that he was not eligible for a a two level downward adjustment under the "safety valve" provision of U.S.S.G. § 5C1.2 and (4) it overstated the amount of drugs attributable to him. Defendant also objected to the government's failure to request a third level for acceptance of responsibility. After hearing testimony from Deputy Jesse Valdez, the Court accepted the findings of the PSIR and overruled all of defendant's objections. It then sentenced defendant to 151 months in prison.[3] Patrick E. D'Arcy represented defendant throughout this proceeding.

On September 28, 2009, defendant filed a pro se motion to vacate his sentence under 28 U.S.C. § 2255. Liberally construed, defendant's motion alleges that Mr. D'Arcy was ineffective because (1) he failed to show that the firearm and drugs which officers seized from the Bunker Avenue house were not reasonably foreseeable to defendant, (2) he failed to show that defendant was entitled to a downward adjustment for his mitigating role in the offense under U.S.S.G. § 3B1.2, (3) he did not show that defendant was eligible for the safety valve and (4) he did not inform defendant that by waiting until the day of trial to plead guilty, he would be ineligible for the third

---

[3] The Court sentenced defendant's cousin, Hector Moreira, to life in prison. Hector Moreira appealed, and the Tenth Circuit affirmed. See United States v. Hector Moreira, 317 Fed. Appx. 745 (10th Cir. Nov. 4, 2008), cert. denied, 129 S. Ct. 1600 (2009).

level reduction to his offense level for acceptance of responsibility.

## **Analysis**

The standard of review of Section 2255 petitions is quite stringent. The Court presumes that the proceedings which led to defendant's conviction were correct. See Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989). To prevail, defendant must show a defect in the proceedings which resulted in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974).

To establish ineffective assistance of counsel, defendant must show that (1) the performance of counsel was deficient and (2) the deficient performance was so prejudicial that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness." United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992). The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988) (citation omitted), cert. denied, 489 U.S. 1089 (1989). As to the second element, the Court must focus on the question "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

**I.      Objection To Drugs And Firearms At 1814 Bunker Avenue – Claims 1 and 2**

In his first two claims, defendant argues that counsel was ineffective because at sentencing

he failed to establish that the drugs and firearms which officers seized from the Bunker Avenue house were not reasonably foreseeable to defendant. The Court first addresses the firearm enhancement.

### A. Objection To Firearm Enhancement

Defendant maintains that counsel was ineffective because he did not establish that the firearms which officers found at the Bunker Avenue house were not reasonably foreseeable to defendant. Section 2D1.1(b)(1) of the Sentencing Guidelines provides a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of a drug trafficking crime. The Sentencing Guidelines provide that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, Application Note 3. The government bears the initial burden of proving possession of a weapon by a preponderance of the evidence. United States v. Pompey, 264 F.3d 1176, 1180 (10th Cir. 2001); United States v. Smith, 131 F.3d 1392, 1400 (10th Cir. 1997), cert. denied, 522 U.S. 1141 (1998); United States v. Roberts, 980 F.2d 645, 647 (10th Cir. 1992). The government can satisfy this burden by demonstrating "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." Pompey, 264 F.3d at 1180; United States v. Roederer, 11 F.3d 973, 982 (10th Cir. 1993); see Roberts, 980 F.2d at 647. Thus, "mere proximity to the offense" may satisfy the government's initial burden. United States v. Vaziri, 164 F.3d 556, 568 (10th Cir. 1999); Smith, 131 F.3d at 1400. If the government satisfies its initial burden, the burden shifts to defendant to show "that it is clearly improbable the weapon was connected with the offense." Pompey, 264 F.3d at 1181; Vaziri, 164 F.3d at 568; Roberts, 980 F.2d at 647; see United States v. Dickerson, 195 F.3d 1183, 1188 (10th Cir. 1999).

In the case of jointly undertaken criminal activity such as a drug trafficking conspiracy, the district court must consider all reasonably foreseeable acts of others in furtherance of the criminal activity when applying sentencing enhancements. See U.S.S.G. § 1B1.3(a)(1)(B). The Court must "attribute to a defendant weapons possessed by his co-defendants if the possession of weapons was known to the defendant or reasonably foreseeable by him." United States v. McFarlane, 933 F.2d 898, 899 (10th Cir. 1991); see United States v. Humphrey, 208 F.3d 1190, 1210 (10th Cir. 2000) (because defendant convicted of conspiracy, Guidelines provision authorizes increase in offense level even if gun actually possessed only by co-conspirator).

Based on the PSIR and the testimony by Deputy Jesse Valdez II, the government had ample evidence to satisfy its initial burden. Defendant apparently argues that counsel should have established that it was clearly improbable that the firearms were connected to the conspiracy, but he has not shown a legal or factual basis for such an argument. Indeed, the Tenth Circuit rejected defendant's challenge for similar reasons on direct appeal. It noted as follows:

> Here, Mr. [Bayron] Moreira does not contest that one of his coconspirators possessed the guns - either Hector Moreira or Mr. Perez-Jacome. Both had keys to the Bunker Avenue house where the guns were found. He also does not contest that the guns were possessed in connection with the drug conspiracy. Instead, Mr. Moreira's only argument is that the district court clearly erred in determining that it was reasonably foreseeable to him that his coconspirators possessed weapons. We find that the district court did not clearly err.
>
> Mr. Moreira's participation in a large-scale drug conspiracy, coupled with the large amount of drugs found at the Bunker Avenue house and Mr. Moreira's personal connection to the Bunker Avenue house, provided a sufficient basis for the district court to find that it was reasonably foreseeable to Mr. Moreira that his coconspirators possessed firearms. Mr. Moreira was directly involved in the drug conspiracy, selling drugs for Hector Moreira on numerous occasions. Mr. Moreira, in one instance, after making a drug sale returned to the Bunker Avenue house where the drugs and firearms were found.
>
> Further, it is clear that the Bunker Avenue house was the focal point of a

> large drug-trafficking operation. Indeed, as Mr. Moreira describes it, Bunker Avenue was a "drug stash house." Aplt. Resp. Br. at 19. Large amounts of drugs, drug paraphernalia, and cash were found at the house. And, significantly in light of Mr. Moreira's visit to the house, large quantities of drugs were found in plain view. See PSR, supra, ¶ 69 at 17-18 (noting that drugs were found in the kitchen area on the counter and on top of the stove).
>
> Given Mr. Moreira's involvement in the conspiracy, presence at the Bunker Avenue house, knowledge that the house was a drug stash house, and the large amount of drugs found hidden and in plain view at the house, it was not clearly erroneous for the district court to find that Mr. Moreira could reasonably foresee that his coconspirators would possess firearms at the Bunker Avenue house for the protection of their drugs, drug paraphernalia, and cash receipts. See [United States v.] Nicholson, 983 F.2d [983,] 990 [(10th Cir. 1993)]; [United States v.] McKissick, 204 F.3d [1282,] 1293 [(10th Cir. 2000)]; [United States v.] Hishaw, 235 F.3d [565,] 573 [(10th Cir. 2000)]; cf. United States v. Wade, 318 F.3d 698, 702 (6th Cir. 2003) ("We are willing to infer that a coconspirator's firearm possession is foreseeable based sole[ly] on the quantity of drugs involved only when the quantity of drugs at issue is so large that the participants would expect others to be carrying protection.").

Moreira, 333 Fed. Appx. at 371-72 (footnotes omitted).

In light of the PSIR and the Tenth Circuit findings on appeal, defendant cannot show that counsel's objection to the firearm enhancement was deficient or prejudicial. The Court therefore overrules defendant's first claim for relief.

B.      Objection To Drug Quantity

Defendant argues that counsel was ineffective because at sentencing, he failed to establish that the drugs which officers seized from the Bunker Avenue house were not reasonably foreseeable to defendant.[4] As explained above, when applying sentencing enhancements in the case of jointly

---

[4] On direct appeal, defendant challenged the Court's computation of the drug quantity. The Tenth Circuit noted that defendant did not pursue the argument in his response brief. In any event, the Tenth Circuit noted as follows:

> The controlled buy from Mr. Moreira provided a concrete benchmark (i.e., actual narcotics in custody) from which the district court could extrapolate the drug
> (continued...)

undertaken criminal activity such as a drug trafficking conspiracy, the district court must consider all reasonably foreseeable acts of others in furtherance of the criminal activity. See U.S.S.G. § 1B1.3(a)(1)(B). In a conspiracy, defendant is accountable for "all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." United States v. Lauder, 409 F.3d 1254, 1267 (10th Cir. 2005) (quotation and alterations omitted); see United States v. Sells, 541 F.3d 1227, 1235 (10th Cir. 2008) (all drugs manufactured by co-defendant foreseeable to defendant who joined conspiracy with knowledge that manufacturing methamphetamine was essential part of integrated drug enterprise); United States v. Albarran, 233 F.3d 972, 980 (7th Cir. 2000) (as co-conspirator, defendant accountable for transaction in which he did not personally participate if deal was reasonably foreseeable to him).

At sentencing, the Court determined that defendant was accountable for the drugs found at the Bunker Avenue residence because they fell within the scope of the agreement to distribute drugs with Hector Moreira. See PSIR ¶ 83. As noted above, the Tenth Circuit concluded that the Court did not err in finding that defendant could reasonably foresee that his co-conspirators would possess firearms at the Bunker Avenue house to protect their drugs, drug paraphernalia and cash receipts.

---

[4](...continued)
quantity involved in prior sales for purposes of the Guidelines and, as the PSR author noted, PSR, supra, ¶ 165, at 36, witnesses beyond the confidential informant testified to prior sales of narcotics, which could support the Guidelines drug quantity attributable to Mr. Moreira. See United States v. Ballard, 16 F.3d 1110, 1115 n.5 (10th Cir. 1994); United States v. Beaulieu, 893 F.2d 1177, 1180-81 (10th Cir. 1990); cf. United States v. Ortiz, 993 F.2d 204, 207 (10th Cir. 1993) ("The only evidence in the record supporting the district court's finding that Defendant distributed ninety-seven kilograms of marijuana is an out of court statement by a confidential informant.").

Moreira, 333 Fed. Appx. at 369 n.4

See Moreira, 333 Fed. Appx. at 372. Likewise, based on defendant's knowledge of the drug activities of Hector Moreira and Perez-Jacome, he could reasonably foresee that his co-defendants would possess drugs at the Bunker Avenue house. Counsel's failure to establish that the drugs found at the Bunker Avenue house were not reasonably foreseeable to defendant was not deficient or prejudicial. The Court therefore overrules defendant's second claim for relief.

## II. Failure To Obtain Mitigating Role Adjustment

Defendant argues that counsel was ineffective because at sentencing, he did not show that defendant was entitled to a downward adjustment for a mitigating role in the offense under U.S.S.G. § 3B1.2. See Memorandum Of Law (attached to Doc. #619) at 26-28. Counsel did object that the PSIR did not include a downward adjustment for a minor or minimal role in the offense. Counsel's performance in raising the objection was within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689. Even if counsel was somehow deficient in how he raised the objection, defendant has not shown that if counsel had raised the objection in a different manner, the result of the sentencing proceeding would have been different. In this regard, the Tenth Circuit held that the Court correctly found that defendant did not prove that a minor role adjustment was warranted. The Tenth Circuit noted as follows:

> Mr. Moreira next argues that the district court erred in denying his motion for a minor participant adjustment. Under U.S.S.G. § 3B1.2(b), a minor participant in a criminal activity is entitled to a two level reduction in his offense level. This Guidelines provision is only applicable where there is more than one participant involved in the offense. U.S.S.G. § 3B1.2 cmt. n.2; United States v. Salazar-Samaniega, 361 F.3d 1271, 1277 (10th Cir. 2004). A minor participant is one who "play[ed] a part in committing the offense that makes him substantially less culpable than the average participant," but whose role was not minimal. U.S.S.G. § 3B1.2 cmt. nn.3(A), 5. A minimal participant is one who is "plainly among the least culpable of those involved in the conduct of a group." Id. § 3B1.2 cmt. n.4.
>
> Our inquiry is focused upon "the defendant's knowledge or lack thereof

concerning the scope and structure of the enterprise," Salazar-Samaniega, 361 F.3d at 1277 (internal quotation marks omitted), and "the defendant's culpability relative to the other participants in [the] offense," United States v. Williamson, 53 F.3d 1500, 1524 (10th Cir. 1995). See also United States v. Harfst, 168 F.3d 398, 403 (10th Cir. 1999) (acknowledging that "evidence of the relative roles of any other participants in the criminal activity . . . is required for consideration of a § 3B1.2 adjustment" and that "a sentencing court may consider the underlying scheme, as opposed to merely the offense of conviction, in determining role in the offense adjustments" (internal quotation marks omitted)). The "defendant bears the burden of proving by a preponderance of the evidence whether [the adjustment] is warranted." United States v. Martinez, 512 F.3d 1268, 1275 (10th Cir.), cert. denied, --- U.S. ----, 128 S.Ct. 2461, 171 L.Ed.2d 255 (2008). The "denial of a minor participant status represents a finding of fact," which we review for clear error. Id.

Here, the district court did not clearly err in finding that Mr. Moreira did not prove by a preponderance of the evidence that the minor role adjustment was warranted. Mr. Moreira does not contest his knowledge of the scope or structure of the criminal enterprise. He only alleges that he was less culpable than his codefendants. Mr. Moreira was a drug courier. Couriers, though, are not per se minor participants. United States v. Ballard, 16 F.3d 1110, 1115 (10th Cir. 1994).

The record shows that Mr. Moreira has on numerous occasions either been present at or directly executed drug transactions; he was not a one-time participant. PSR, supra, ¶ 76 at 19 ("[Mr. Keith Middleton] said Bayron Moreira, Kenet Del Cid-Rendon, and Edguar Lizardo-Figueroa were present at drug transactions on several occasions."); id. ¶ 77 at 19 ("[Kelsey McCarthy] said she purchased cocaine from Bayron Moreira a few times."); id. ¶ 82 at 20 ("[Confidential source 3] stated that he had purchased from Bayron Moreira on three to four occasions (excluding April 18, 2006, purchase). . . ."). Indeed, there was evidence before the district court that Mr. Moreira was present at drug transactions on several occasions with individuals identified as Hector Moreira's "lieutenants," id., ¶¶ 73, 76, suggesting that he was more than a low-level drug courier.

Moreover, following the arrest of those so-called lieutenants - and almost all of the other members of the conspiracy - it would not have been unreasonable for the district court to infer, as the government argued, that Hector Moreira had to "resort to other individuals" including Mr. Moreira "to take th[eir] lead." R., Vol. III, Tr. at 16-17. The district court specifically concluded that Mr. Moreira's "role in this [conspiracy] was vital and significant and he played a substantial role in distributing methamphetamine to purchasers in the Kansas City area." [footnote] Principally based upon this statement, Mr. Moreira contends that the district court applied the wrong standard as to who is a minor participant. He claims that the court improperly relied on the seriousness of his crime, rather than considering his relative culpability compared to other members of the conspiracy. However, this argument is without

-11-

merit. It is clear that the court was properly focused on Mr. Moreira's relative culpability. The court pressed Mr. Moreira's counsel to explain why he was not "just as involved as all the other people that were selling drugs for Hector Moreira." R., Vol. III, Tr. at 16. And, prior to overruling Mr. Moreira's objection, the district court remarked that it was Mr. Moreira's burden "to show that he's substantially less culpable than the average participant." Id. at 19. Therefore, we are left with no doubt that the court understood the nature of the role-in-the-offense inquiry; it simply found that Mr. Moreira did not carry his burden of proof. [end footnote] R., Vol. III, Tr. at 19.

       In sum, the record shows that, at the very least, Mr. Moreira's pattern of conduct was consistent with the level of participation of the average coconspirator dealing drugs for Hector Moreira. Accordingly, the district court did not clearly err in not applying the minor role adjustment.

Moreira, 333 Fed. Appx. at 374-75.

In light of the PSIR and the Tenth Circuit findings on appeal, defendant has not shown that counsel's performance in objecting to defendant's role in the offense was deficient or prejudicial. The Court therefore overrules defendant's third claim for relief.

## III.    Failure To Obtain Safety Valve Relief – Claim 4

Defendant argues that counsel was ineffective because he did not show that defendant was eligible for the safety valve. See Memorandum Of Law (attached to Doc. #619) at 28-33. Section 5C1.2 of the Sentencing Guidelines states that "the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence" if it finds that defendant meets all of the safety valve criteria. U.S.S.G. § 5C1.2(a); see 18 U.S.C. § 3553(f) (district court must impose guideline sentence without regard to mandatory minimum if defendant meets safety valve criteria). Counsel raised this objection at sentencing, but defendant was ineligible for the safety valve because he did not provide full and truthful information to the government concerning the offense conduct. See PSIR ¶ 162; Transcript of Sentencing (Doc. #498) at 22-25. In addition, defendant's sentence of 151 months was within the guideline range (151 to

188 months), which was above the mandatory minimum sentence of ten years. The safety valve therefore could not provide relief in his case. See United States v. Morales-Morales, No. 02-20082-02-KHV, 2005 WL 3845347, at *6 n.4 (D. Kan. Jan. 7, 2005) (because minimum of applicable guideline range greater than statutory minimum, safety valve argument moot). Because defendant was not eligible for the safety valve, counsel was not ineffective in failing to pursue a safety valve argument. The Court therefore overrules defendant's fourth claim for relief.

## IV.  Failure To Advise Defendant About Effect Of Untimely Plea – Claim 5

Defendant argues that counsel was ineffective because he did not tell defendant that by waiting to plead guilty until the day of trial, he would be ineligible for the third level for acceptance of responsibility.[5] See Memorandum Of Law (attached to Doc. #619) at 34-36. Section 3E1.1(a)

---

[5]    The Tenth Circuit addressed a related claim, as to Hector Moreira, as follows:

At sentencing, the district court found that Mr. Moreira had accepted responsibility for his offenses and decreased his offense level by two points under § 3E1.1(a). The government did not move for an additional one-point adjustment under § 3E1.1(b) and the court accordingly did not grant one. Both the government and the court noted that the government had not been spared the expense of preparing for trial, as Mr. Moreira did not plead guilty until the morning his trial was scheduled to begin.

On appeal, Mr. Moreira contends that he waited to plead guilty until his trial date only because the government had previously refused to debrief him until that point. He argues, without legal citation, that "it is inappropriate to permit the government's obduracy to serve as a base from which he can be deprived of the third level for acceptance of responsibility." We have held, however, that a sentencing court "can review the government's refusal to file a Section 3E1.1(b) motion and grant a remedy if it finds the refusal was (1) animated by an unconstitutional motive, or (2) not rationally related to a legitimate government end." United States v. Moreno-Trevino, 432 F.3d 1181, 1186 (10th Cir. 2005) (quotations omitted). In this case, Mr. Moreira does not claim that the government's decision not to seek an additional one-point downward adjustment was animated by an unconstitutional motive or that it was not related to a legitimate government end. Therefore, we do

(continued...)

-13-

of the Guidelines provides that if defendant clearly demonstrates acceptance of responsibility for his offense, the Court shall decrease the offense level by two levels. Section 3E1.1(b) provides a reduction of one additional level "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently."

Even if the Court assumes that counsel did not inform defendant that he might lose an additional level for acceptance of responsibility, defendant has not shown that counsel's performance was prejudicial (that is, it would have altered his decision to wait to plead guilty). At the change of plea hearing, defendant explained that he waited to plead guilty because he had been holding out for a deal and he did not want to provide information against Hector Moreira. See Transcript Of Change Of Plea Hearing (Doc. #497) at 45-46 (reluctant to plead because he hoped government would agree to plea which did not include conspiracy count and he did not want to testify against Hector Moreira); Transcript Of Sentencing (Doc. #498) at 24-25 (defendant waited to see if government would offer meaningful plea agreement). Defendant has not presented any evidence which suggests that if he had known that he might lose the third level for acceptance of responsibility, he would have pled sufficiently in advance of trial so as to receive the third level

---

[5](...continued)
not have the authority to review it.

United States v. Hector Moreira, 317 Fed. Appx. 745, (10th Cir. Nov. 4, 2008), cert. denied, 129 S. Ct. 1600 (2009).

downward adjustment. See Government Response (Doc. #622) at 21 (because government expended extensive and valuable resources, it would not have recommended third level reduction even for plea several months before trial). Defendant has not shown that if counsel had advised him of his eligibility for an additional level for acceptance of responsibility, he would have pled guilty several months in advance of trial, before any of the major co-defendants in this case. Because defendant has not shown prejudice from counsel's performance, the Court overrules his fifth claim for relief.

**V.      Conclusion**

The files and records in this case conclusively show that defendant is not entitled to relief. Moreover, defendant does not allege specific and particularized facts which, if true, would entitle him to relief. Accordingly, no evidentiary hearing is required. See 28 U.S.C. § 2255; Kilpatrick, 1997 WL 537866, at *3 (allegations of ineffective assistance must be specific and particularized; conclusory allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where factual matters raised by Section 2255 petition may be resolved on record); United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by the record).

**IT IS THEREFORE ORDERED** that defendant's Motion To Vacate, Set Aside Or Correct Sentence By A Person In Federal Custody (Doc. #619) filed September 28, 2009 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that defendant's Motion For A 30 Day Extension Of Time to Respond To The Government's Response To Movant's Motion To Vacate, Set Aside Or Correct

<u>Said Sentence Pursuant To Title 28 USC Section 2255</u> (Doc. #632) filed March 17, 2010 be and hereby is **OVERRULED.**

Dated this 23rd day of March, 2010, at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge